## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO,
## WESTERN DIVISION

NEWMAN SANITARY GASKET as     :     Case No.
Plan Administrator of the Newman Sanitary
Gasket Employee Benefit Plan,     :     COMPLAINT FOR:
964 West Main Street                    1.     RELIEF PURSUANT TO 29 U.S.C.
Lebanon, OH 45036,     :          §1132(a)(3);
                                         2.     DECLARATORY RELIEF
         Plaintiff,     :          PURSUANT TO 28 U.S.C. §2201;
                                         3.     ATTORNEYS FEES AND COSTS
v.     :     4.     CIVIL THEFT;
JONI TURNER,     :     5.     CONVERSION.
7936 Acorn Trail
Maineville, Ohio 45039,     and     :

THE TURNER LAW GROUP, INC.,     :
7419 Kingsgate Way
West Chester, Ohio 45069,     :

         Defendants.     :

## COMPLAINT

For its Complaint against Defendants Joni Turner and The Turner Law Group, Inc., the

Plaintiff, Newman Sanitary Gasket as Plan Administrator of the Newman Sanitary Gasket

Employee Benefit Plan, avers and states as follows:

## BACKGROUND

1.     This is an action under sections 502(a)(2) and 502(a)(3) of the Employee

Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. §1132(a)(3) for

equitable relief to both remedy violations of and enforce the Newman Sanitary Gasket Employee

Benefit Plan (sometimes hereinafter referred to as the "Plan"), which is a self-funded employee

welfare benefit plan within the meaning of 3(a) of ERISA, 29 U.S.C. § 1002(1).

2.     The Plan has paid benefits on behalf of an adult, Karen McIntosh (hereinafter

1

"Participant") for injuries she sustained from a July 25, 2014 motorcycle accident. The Plan seeks equitable relief in the form of a constructive trust and/or equitable lien by agreement upon amounts held by Joni Turner and/or The Turner Law Group, Inc. that belong in good conscience to the Plan.

3.     This is an action, in part, for equitable relief and the imposition of a constructive trust and/or equitable lien over identifiable funds in the possession or constructive possession of the Defendants.

## JURISDICTION AND VENUE

4.     Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331. The Court has the exclusive subject matter jurisdiction over this action, pursuant to 29 U.S.C. § 1132(e)(1).

5.     Venue in this Court is proper, pursuant to 29 U.S.C. § 1132(e)(2), because this is where the plan is administered. Venue is also proper before this Court because the Defendants does business in, and thus reside in this judicial district. 28 U.S.C. § 1391(b).

## THE PARTIES

6.     Plaintiff, Newman Sanitary Gasket, was for pertinent times hereto the plan administrator and a fiduciary of the Newman Sanitary Gasket Employee Benefit Plan, which is administered at 964 West Main Street, Lebanon, OH 45036.

7.     This is a civil action under 29 U.S.C. §1132(a)(2), by a "fiduciary," as defined under 29 U.S.C. §1002(21)(A), to enforce the provisions of Subchapter I, part 6 of ERISA, 29 U.S.C. §§1161-1169, and the terms of the Plan. Federal jurisdiction therefore exists under 29 U.S.C. §1132(e)(1).

8.     This is a civil action under 29 U.S.C. §1132(a)(3), by a "fiduciary," as defined

2

under 29 U.S.C. §1002(21)(A), to (i) enjoin acts or practices which violate the provisions of Subchapter I of ERISA and the terms of the Plan, and (ii) to obtain other appropriate equitable relief to redress such violations. Therefore, federal jurisdiction exists under 29 U.S.C. §1132(e)(1)

9.      Plaintiff is authorized to bring this action on behalf of all Plan participants and beneficiaries to enforce the terms of the Plan and to protect the assets of the Plan under 29 U.S.C. § 1132(a)(2), (a)(3) and federal common law.

10.      Upon information and belief, Joni Turner ("Turner"), for the periods of time relevant to this Complaint, is an Ohio resident and principal of the law firm The Turner Law Group, Inc., who represented the Participant for her injuries related to the accident. She is an Ohio resident and may be personally served at 7936 Acorn Trail, Maineville, Ohio 45039 or 345 E. 7th Street, Apt. 1414, Cincinnati, OH 45202. This Defendant is a necessary party to this litigation as she has wrongfully disbursed settlement funds to herself and as she is a trustee of the Participant's settlement funds and is in actual and/or constructive control of the funds and is named as a Defendant to ensure that full relief may be granted in accordance with the prayer for relief.

11.      Upon information and belief, The Turner Law Group, Inc. ("Turner Law Group"), for the periods of time relevant to this Complaint, is a business licensed to and conducting business in the State of Ohio and is therefore considered a resident of Ohio and can be served c/o Joni Turner, 7419 Kingsgate Way, West Chester, Ohio 45069. This Defendant is a necessary party to this litigation as it has wrongfully disbursed settlement funds to itself and as it is a trustee of the Participant's settlement funds and is in actual and/or constructive control of the funds, and is named as a Defendant to ensure that full relief may be granted in accordance with the prayer for relief.

3

## **FACTUAL ALLEGATIONS**

12.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 11 of the Complaint as if each paragraph were fully set forth verbatim herein.

13.     At all times relevant to this Complaint, the Participant was a covered person under the terms of the Plan.

14.     On or around July 25, 2014, the Participant sustained injuries as a result of a motorcycle accident.

15.     The Participant filed claims against the parties responsible for her injuries and damages sustained as a result of the motorcycle accident, including medical expenses paid by the Plan.

16.     The Plan has paid medical expenses in the amount of $34,197.64 directly from the assets of the Plan sponsor, on behalf of the Participant for injuries she sustained as a result of the motorcycle accident and seeks to recover these monies from the Defendants to the fullest extent they have recovered monies from the party(ies) responsible for Participant's injuries.

17.     The Plan contains the following provisions governing subrogation and reimbursement:

**THIRD-PARTY RECOVERY, SUBROGATION AND REIMBURSEMENT**

**Payment Condition**

1.   The Plan, in its sole discretion, may elect to conditionally advance payment of benefits in those situations where an Injury, Sickness, Disease or disability is caused in whole or in part by, or results from the acts or omissions of Participants, and/or their Dependents, beneficiaries, estate, heirs, guardian, personal representative, or assigns (collectively referred to hereinafter in this section as "Participant(s)") or a third party, where any party besides the Plan may be responsible for expenses arising from an incident, and/or other funds are available, including but not limited to no-fault, uninsured motorist, underinsured motorist, medical payment provisions, third party assets, third party insurance, and/or guarantor(s) of a third party (collectively "Coverage").

2.   The Participant(s), his or her attorney, and/or legal guardian of a minor or incapacitated individual agrees

4

that acceptance of the Plan's conditional payment of medical benefits is constructive notice of these provisions in their entirety and agrees to maintain 100% of the Plan's conditional payment of benefits or the full extent of payment from any one or combination of first and third party sources in trust, without disruption except for reimbursement to the Plan or the Plan's assignee. The Plan shall have an equitable lien on any funds received by the Participant(s) and/or his or her attorney from any source and said funds shall be held in trust until such time as the obligations under this provision are fully satisfied. The Participant(s) agrees to include the Plan's name as a co-payee on any and all settlement drafts. Further, by accepting benefits the Participant(s) understands that any recovery obtained pursuant to this section is an asset of the Plan to the extent of the amount of benefits paid by the Plan and that the Participant(s) shall be a trustee over those Plan assets.

3. In the event a Participant(s) settles, recovers, or is reimbursed by any Coverage, the Participant(s) agrees to reimburse the Plan for all benefits paid or that will be paid by the Plan on behalf of the Participant(s). If the Participant(s) fails to reimburse the Plan out of any judgment or settlement received, the Participant(s) will be responsible for any and all expenses (fees and costs) associated with the Plan's attempt to recover such money.

4. If there is more than one party responsible for charges paid by the Plan, or may be responsible for charges paid by the Plan, the Plan will not be required to select a particular party from whom reimbursement is due. Furthermore, unallocated settlement funds meant to compensate multiple injured parties of which the Participant(s) is/are only one or a few, that unallocated settlement fund is considered designated as an "identifiable" fund from which the plan may seek reimbursement.

## Subrogation

1. As a condition to participating in and receiving benefits under this Plan, the Participant(s) agrees to assign to the Plan the right to subrogate and pursue any and all claims, causes of action or rights that may arise against any person, corporation and/or entity and to any Coverage to which the Participant(s) is entitled, regardless of how classified or characterized, at the Plan's discretion, if the Participant(s) fails to so pursue said rights and/or action.

2. If a Participant(s) receives or becomes entitled to receive benefits, an automatic equitable lien attaches in favor of the Plan to any claim, which any Participant(s) may have against any Coverage and/or party causing the Sickness or Injury to the extent of such conditional payment by the Plan plus reasonable costs of collection. The Participant(s) is obligated to notify the Plan or it authorized representative of any settlement prior to finalization of the settlement, execution of a release, or receipt of applicable funds. The Participant(s) is also obligated to hold any and all funds so received in trust on the Plan's behalf and function as a trustee as it applies to those funds until the Plan's rights described herein are honored and the Plan is reimbursed.

3. The Plan may, at its discretion, in its own name or in the name of the Participant(s) commence a proceeding or pursue a claim against any party or Coverage for the recovery of all damages to the full extent of the value of any such benefits or conditional payments advanced by the Plan.

4. If the Participant(s) fails to file a claim or pursue damages against:

    a. The responsible party, its insurer, or any other source on behalf of that party.

    b. Any first party insurance through medical payment coverage, personal injury protection, no-fault coverage, uninsured or underinsured motorist coverage.

    c. Any policy of insurance from any insurance company or guarantor of a third party.

    d. Workers' compensation or other liability insurance company.

- Any other source, including but not limited to crime victim restitution funds, any medical, disability or other benefit payments, and school insurance coverage.

the Participant(s) authorizes the Plan to pursue, sue, compromise and/or settle any such claims in the Participant(s)' and/or the Plan's name and agrees to fully cooperate with the Plan in the prosecution of any such claims. The Participant(s) assigns all rights to the Plan or its assignee to pursue a claim and the recovery of all expenses from any and all sources listed above.

### Right of Reimbursement

1. The Plan shall be entitled to recover 100% of the benefits paid, without deduction for attorneys' fees and costs or application of the common fund doctrine, make whole doctrine, or any other similar legal theory, without regard to whether the Participant(s) is fully compensated by his or her recovery from all sources. The Plan shall have an equitable lien which supersedes all common law or statutory rules, doctrines, and laws of any State prohibiting assignment of rights which interferes with or compromises in any way the Plan's equitable lien and right to reimbursement. The obligation to reimburse the Plan in full exists regardless of how the judgment or settlement is classified and whether or not the judgment or settlement specifically designates the recovery or a portion of it as including medical, disability, or other expenses. If the Participant(s)' recovery is less than the benefits paid, then the Plan is entitled to be paid all of the recovery achieved. Any funds received by the Participant(s) are deemed held in constructive trust and should not be dissipated or disbursed until such time as the Participant's/Participants' obligation to reimburse the Plan has been satisfied in accordance with these provisions. The Participant(s) is also obligated to hold any and all funds so received in trust on the Plan's behalf and function as a trustee as it applies to those funds until the Plan's rights described herein are honored and the Plan is reimbursed.

2. No court costs, experts' fees, attorneys' fees, filing fees, or other costs or expenses of litigation may be deducted from the Plan's recovery without the prior, express written consent of the Plan.

3. The Plan's right of subrogation and reimbursement will not be reduced or affected as a result of any fault or claim on the part of the Participant(s), whether under the doctrines of causation, comparative fault or contributory negligence, or other similar doctrine in law. Accordingly, any lien reduction statutes, which attempt to apply such laws and reduce a subrogating Plan's recovery will not be applicable to the Plan and will not reduce the Plan's reimbursement rights.

4. These rights of subrogation and reimbursement shall apply without regard to whether any separate written acknowledgment of these rights is required by the Plan and signed by the Participant(s).

5. This provision shall not limit any other remedies of the Plan provided by law. These rights of subrogation and reimbursement shall apply without regard to the location of the event that led to or caused the applicable Sickness, Injury, Disease or disability.

### Participant(s) is a Trustee Over Plan Assets

1. Any Participant(s) who receives benefits and is therefore subject to the terms of this section is hereby deemed a recipient and holder of Plan assets and is therefore deemed a trustee of the Plan solely as it relates to possession of any funds which may be owed to the Plan as a result of any settlement, judgment or recovery through any other means arising from any Injury or accident. By virtue of this status, the Participant(s) understands that he/she is required to:

   a. notify the Plan or its authorized representative of any settlement prior to finalization of the settlement, execution of a release, or receipt of applicable funds;
   b. instruct his/her attorney to ensure that the Plan and/or its authorized representative is included as a payee on all settlement drafts;

6

      c.   in circumstances where the Participant(s) is not represented by an attorney, instruct the insurance company or any third party from whom the Participant(s) obtains a settlement, judgment or other source of Coverage to include the Plan or its authorized representative as a payee on the settlement draft; and,

      d.   Hold any and all funds so received in trust, on the Plan's behalf, and function as a trustee as it applies to those funds, until the Plan's rights described herein are honored and the Plan is reimbursed.

2.      To the extent the Participant(s) disputes this obligation to the Plan under this section, the Participant(s) or any of its agents or representatives is also required to hold any/all settlement funds, including the entire settlement if the settlement is less than the Plan's interests, and without reduction in consideration of attorneys' fees, for which he/she exercises control, in an account segregated from his or her general accounts or general assets until such time as the dispute is resolved.

3.      No Participant(s), beneficiary, or the agents or representatives thereof, exercising control over plan assets and incurring trustee responsibility in accordance with this section will have any authority to accept any reduction of the Plan's interest on the Plan's behalf.

(Exhibit 1, Plan Amendment and Summary of Material Modifications.)

18.   The Participant retained Attorney Joni Turner of The Turner Law Group, Inc. in West Chester, Ohio to pursue claims against the parties responsible for her accident and injuries.

19.   That the Plan retained The Phia Group ("Phia"), as its representative to pursue subrogation recoveries on behalf of the Plan.

20.   That Phia sent letters to Joni Turner notifying her of the Plan's reimbursement rights.

21.   That on September 1, 2015, the Plan's representatives sent a subrogation letter to The Motorists Mutual Insurance Company, which was the third party that the Participant was pursuing as a result of the July 25, 2014 motorcycle accident.

22.   That on September 14, 2017, Motorists Mutual Insurance Company issued a check representing the Plan's lien in the amount of $34,347.89 made payable to Phia, as the Plan's representative, the Participant and her attorney, Joni Turner. (A true and correct copy of the check is attached as Exhibit 2.)

23.     That unbeknownst to the Plan or Phia the settlement check was sent by Motorists Mutual directly to Joni Turner.

24.     That in January and February of 2018, Joni Turner communicated with Phia in an attempt to negotiate the amount of the Plan's lien but Ms. Turner did not advise Phia or the Plan that she had received a settlement check in the amount of $34,347.89 made payable to Phia.

25.     That following the unsuccessful settlement negotiations, Joni Turner ceased communicating with Phia.

26.     That as a result of Ms. Turner's refusal to communicate with Phia, it attempted to find out from Motorists Mutual whether the case has settled.

27.     That on August 2, 2018, Motorists Mutual confirmed that the case had settled and faxed to Phia a copy of the endorsed settlement check made payable to Phia.

28.     That Joni Turner signed the settlement check made payable to Phia without its knowledge or consent and negotiated the check.

29.     On August 3, 2018, the Participant sent a fax directly to Phia stating that she had directed her attorney Joni Turner to reimburse the Plan through Phia from the funds received from the motorcycle accident on July 25, 2014.

30.     Upon information and belief Defendant Turner deposited the settlement check in Turner Law Group's trust account.

31.     Upon information and belief, Defendant Turner had taken a portion of the $85,000 in settlement funds from Turner Law Group's trust account and paid herself in violation of the terms of the Plan and her client's obligations.

8

32.     Further, despite numerous communications from the Plan and its representatives, the Defendants have ignored all requests to reimburse the Plan.

33.     Pursuant to Rule 1.15 of the Ohio Rules of Professional Conduct, since Joni Turner was aware of Plaintiff's ERISA lien in this matter, upon receiving the settlement funds from the third party in which the Plan claimed an interest, Turner was required to promptly notify the Plan, and to promptly deliver to the Plan the funds and render a full accounting upon the request.

34.     Pursuant to Rule 1.15(d) of the Ohio Rules of Professional Conduct, when Joni Turner came into possession of property in which he and the Plan claimed an interest, the property was to be kept separate by Mr. Turner until there was an accounting and severance of the respective interests. Since Ms. Turner was aware that a dispute had arisen concerning the respective interests, the portion in dispute was to be kept separate until the dispute was resolved.

## COUNT I
## CLAIMS FOR RELIEF UNDER 29 U.S.C. § 1132(a)(3)
## (AGAINST ALL DEFENDANTS)

35.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 34 of the Plaintiff's Complaint as if each paragraph were fully set forth verbatim herein.

36.     The terms of the Plan are binding upon the Participant as a plan participant and covered person and any attorneys retained by her.

37.     That where other coverage is available to participants, the Plan only pays benefits conditionally upon the Participant's agreement that she and her attorneys will reimburse the Plan for payments it has made in the event of a recovery from a third party.

9

38.     The Subrogation and Reimbursement provision creates an equitable lien by agreement over any subsequent recovery from another party.

39.     In this case, the Plan has a right to reimbursement of medical expenses it paid on behalf of Participant from any and all settlement(s) received from parties responsible for her injuries up to the sum of $34,197.64.

40.     That Defendants took at least $34,197.64 of the settlement funds.

41.     That the Defendants are in possession and/or constructive possession of funds to which they are not entitled, and that belong in good conscience to the Plan.

42.     That under ERISA section 502(a)(3) there are no limitations upon a party who holds disputed funds on behalf of a plan participant. *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 244–46, 120 S.Ct. 2180, 2187, 147 L.Ed.2d 187 (2000).

43.     The Sixth Circuit has held that the Plan participant's attorney is a proper defendant where the attorney remains in possession of the funds. *See Longaberger Co. v. Kolt,* 586 F.3d 459 (6th Cir. 2009).

44.     Although the Plaintiff has requested that the Defendants reimburse the Plan, the Defendants have refused to turn over the portion of the settlement funds as required by the terms of the Plan. Defendants' refusal violates the terms of the Plan and ERISA. Plaintiff is entitled to equitable restitution in the form of a constructive trust or equitable lien by agreement with respect to the disputed funds controlled by the Defendants and subject to the equitable tracing rules, including but not limited to the "lowest intermediate balance rule" and the "swollen assets doctrine." *See Word v. Sparks,* 191 Ark. 893, 82 S.W.2d 5, 8 (1935). Further, where a defendant wrongfully commingles another's property with his own, the true owner may seize

10

the entire commingled mass to satisfy his judgment, leaving the wrongdoer to separate out his share. *The Idaho*, 93 U.S. 575, 585-586 (1876).

45.     As a result of Defendants' violation of the terms of the Plan, Plaintiff has been injured.  The Plaintiff in its capacity as fiduciary of the Plan, therefore seeks all appropriate equitable relief, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to a constructive trust and equitable lien upon specifically identifiable and traceable funds in order to enforce the terms of the Plan.

**COUNT II**
**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**
**(AGAINST ALL DEFENDANTS)**

46.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 45 of the Plaintiff's Complaint as if each paragraph were fully set forth verbatim herein.

47.     The terms of the Plan are binding upon the Participant and any attorneys retained by her.

48.     The Defendants agreed not to sign a settlement agreement with any party without the knowledge and consent of the Plan.

49.     The Defendants promised not to do anything to prejudice the Plan's rights of subrogation or reimbursement.

50.     The Defendants breached this obligation by settling with the responsible parties without ever contacting the Plan or its representatives.

51.     The Defendants further agreed that any funds recovered by Participant would be held in trust separately from the property of the Participant.

11

52.     The Plan has an enforceable right to reimbursement for medical expenses it paid on behalf of Participant out of any and all settlement fund(s) the Defendants have received for Enrollee's injuries.

53.     The Defendants promised to promptly reimburse the Plan when a recovery through a settlement is made.

54.     Pursuant to the terms of the Plan, if Defendants fail to reimburse the Plan for all benefits paid out of any settlement received, they will be responsible for any and all expenses (whether fees or costs) associated with the Plan's attempt to recover from the Defendants.

55.     The Plan has attempted to enforce its right to reimbursement by asserting a lien on any recovery received by the Defendants.

56.     The Defendants' continued refusal to honor the terms of the Plan, and continued actions that prejudice the Plan's right of reimbursement are violations of the Plan's terms and a breach of the Defendants' obligations to the Plan.

57.     The Plaintiff seeks a declaratory judgment from the Court construing the subrogation and reimbursement provisions within the Plan and the inapplicability and preemption of the "make-whole" and "common fund" doctrines by ERISA such that the Plan is entitled to first priority reimbursement of the benefits it paid on behalf of Participant from the proceeds of any and all settlement(s) with the responsible third party(ies) that the Defendants have received for Participant's injuries.

## COUNT III
## ATTORNEYS' FEES AND COSTS

58.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 57 of the Plaintiff's Complaint as if each paragraph were fully set forth verbatim herein.

59.　Plaintiff seeks its actual attorneys' fees and costs, pursuant to 29 U.S.C. §1132(g).

60.　Plaintiff is also entitled to its actual attorneys' fees and costs pursuant to the terms of the Subrogation provision within the Plan.

**COUNT IV**
**CIVIL THEFT**

61.　Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 60 of the Plaintiff's Complaint as if each paragraph were fully set forth verbatim herein.

62.　Under 18 U.S.C. § 664, it is a federal crime for any person to "embezzle [], steal[], or unlawfully and willfully abstract[] or convert[] to his own use or to the use of another, any of the *moneys, funds,* securities, premiums, *credits property, or other assets* of any employee welfare benefit plan...." (Emphasis added).

63.　Under Ohio law, R.C. 2307.60 and R.C. 2307.61 recognize civil actions for victims of theft. R.C. 2307.60(A) states, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law * * *."

64.　Upon settlement of the Participant's claims, the Plan's lien automatically attached to the settlement proceeds such that the Plan became constructive owner of $34,197.64 of the settlement funds. *See Sereboff v. Mid Atl. Med. Servs., Inc.,* 547 U.S. 356, 364, 126 S. Ct. 1869, 1875, 164 L. Ed. 2d 612 (2006) (*citing Barnes v. Alexander*, 232 U.S. 117, 34 S. Ct. 276, 58 L. Ed. 530 (1914).

65.　Prior to settlement of the Participant's personal injury lawsuit, the Defendants had actual notice of the Plan's ERISA lien in the amount of $34,197.64.

13

66.     That Defendants took possession of the settlement fund, endorsed and negotiated a check made payable to Phia without its consent, which included funds that in good faith belong to the Plan based upon its equitable lien.

67.     That any monies recovered by Defendants up to the amount of $34,197.64 constituted assets of the Plaintiff's ERISA Plan.

68.     That the Defendants made a willful and knowing, unilateral decision to disburse or partially disburse some or all of the settlement funds subject to the Plan's lien, subsequently misrepresented to the Plan's representative that his office was not on notice of the lien and then attempted to strong-arm the Plan's representative into walking away under the guise of supposed ethical violations.

69.     The Plaintiff is entitled to recover from Defendants the amount of its subrogation interest and lien, totaling $34,197.64, plus treble damages under R.C. 2307.61(A)(1)(b)(ii) and it entitled to its actual attorney fees and costs incurred as a result of Defendant's theft of the funds.

70.     The Plaintiff seeks punitive damages against Defendants for its knowing, deliberate and improper behavior.

**COUNT IV**
**CONVERSION**

71.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 70 of the Plaintiff's Complaint as if each paragraph were fully set forth verbatim herein.

72.     Under Ohio law, conversion is "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent

14

with his rights." *Zacchini v. Scripps–Howard Broadcasting Co.,* 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976), *rev'd on other grounds,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977).

73.     Upon settlement of the Participant's claims, the Plan's lien automatically attached to the settlement proceeds such that the Plan became constructive owner of $146,726.61 of the settlement funds. *See Sereboff v. Mid Atl. Med. Servs., Inc.,* 547 U.S. 356, 364, 126 S. Ct. 1869, 1875, 164 L. Ed. 2d 612 (2006) *(citing Barnes v. Alexander*, 232 U.S. 117, 34 S. Ct. 276, 58 L. Ed. 530 (1914).

74.     Defendants knowingly, unlawfully and without authority assumed dominion and control over Plaintiff's property to the exclusion of Plaintiff's right in the property by endorsing a check made payable to Phia without its consent and by taking those funds for their own benefits.

75.     Defendants knowing retention of a portion of the settlement proceeds and subsequent payment of a portion of the settlement funds to Fisher without reimbursing the Plan's equitable lien constitutes conversion. *See e.g.*, *Barnhill Contracting Co. v. Oxendine*, 105 F. Supp. 3d 542, 551 (E.D.N.C. 2015).

76.     The Plaintiff is entitled to recover from Defendants the amount of its subrogation interest and lien, totaling $34,197.64and it entitled to its actual attorney fees and costs incurred as a result of Defendant's conversion.

77.     The Plaintiff seeks punitive damages against Defendants for their knowing, deliberate and improper behavior.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, Newman Sanitary Gasket as Plan Administrator of the Newman Sanitary Gasket Employee Benefit Plan, requests the following:

A)     The imposition of an *in rem* constructive trust and/or equitable lien by agreement in favor of the Plan in the amount of $34,197.64 from the proceeds of any and all settlement(s), plus accrued interest, in the possession of the Defendants and/or their attorneys, agents, representatives and all those acting in concert with them;

B)     A declaration of the Plan's ownership of the above-referenced settlement funds in the amount of $34,197.64 representing the full amount of payments made by the Plan on behalf of Enrollee;

C)     An accounting of the disposition of any recoveries obtained by the Defendants or proof that the $34,197.64 remains in the Defendants' accounts;

D)     An order directing that any funds, material or property traced to the settlement proceeds received by the Defendants be disgorged and restored to the Plan.

E)     An order enjoining the Defendants from transferring or disposing of any settlement funds which would prejudice, frustrate or impair Plaintiff's ability to recover same;

F)     An order directing the Defendants to turn over the proceeds of the settlement up to $34,197.64 to the Plan, plus accrued interest;

G)     An order directing that any funds, material or property traced to the settlement proceeds received by the Defendants be disgorged and restored to the Plan.

H)    Other and further equitable relief to which the Plaintiff may be entitled, including but not limited to specific performance, which may be necessary for the Defendants to comply with their obligations under the terms of the Plan;

I)    Punitive or exemplary damages against Defendants;

J)    Awarding Plaintiff, Newman Sanitary Gasket as Plan Administrator of the Newman Sanitary Gasket Employee Benefit Plan, pre- and post-judgment interest, costs and attorneys' fees; and

K)    Any other relief as this Court may deem just and proper.

By   /s/Jonathon L. Beck
Jonathon L. Beck (0076709)
Christine N. Farmer (0093824)
YOUNG & ALEXANDER CO., LPA
130 W. Second Street, Suite 1500
Dayton, Ohio 45402
(937) 224-9291 (Telephone)
(937) 224-8977 (Facsimile)
Jbeck@yandalaw.com
cfarmer@yandalaw.com


RYAN L. WOODY, Esq.*
WI Bar No. 1047279
Matthiesen, Wickert & Lehrer, S.C.
1111 E. Sumner Street
Hartford, WI 53027
(262) 673-7850 (Telephone)
(262) 673-3766 (Facsimile)
rwoody@mwl-law.com
*Pro Hac Vice Admission To Be Filed

Attorneys for Plaintiff, Newman Sanitary Gasket as Plan Administrator of the Newman Sanitary Gasket Employee Benefit Plan.

17